

## NUMBER 13-13-00026-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**JOE ANTHONY SAENZ,**                                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                             **Appellee.**

**On appeal from the 36th District Court
of San Patricio County, Texas.**

## MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Longoria
Memorandum Opinion by Justice Benavides**

Appellant Joe Anthony Saenz was convicted of evading arrest and sentenced to 180 days in the Texas Department of Criminal Justice State Jail Division. *See* TEX. PENAL CODE ANN. § 38.04 (West Supp. 2011). By one issue, Saenz argues that the trial court abused its discretion when it denied his motion to suppress and upheld Saenz's

arrest.    We affirm.

## I.    BACKGROUND

On August 21, 2012, the apartment manager of Shady Oaks Apartments in Aransas Pass, Texas called the Aransas Pass Police Department to complain about non-residents loitering at the apartments.    The manager believed these non-residents might be involved in gang activity, drug possession, and/or prostitution.    Officer Stephen Phipps, a five-year certified peace officer, arrived to investigate the complaint. Officer Phipps testified that the police department checked the Shady Oaks Apartments "on a daily or routine[] basis" because of the prevalence of past criminal activity there.

Officer Phipps first confronted a tall, Hispanic male with tattoos (Male One). Before engaging in a conversation with Male One, however, Officer Phipps noticed the following:

> I heard a conversation going on upstairs where a male had knocked on a door, the female had answered and asked him what he wanted and he had asked for a certain person and she said, "That person don't live here, I don't want you knocking on my door."

Officer Phipps observed that the male upstairs was another Hispanic male with tattoos and that the woman looked scared.    This man was later identified as Saenz, and the woman was identified as Morgan Jones.    Officer Phipps returned his attention to Male One and noted that Male One's tattoos looked like Texas Syndicate markings.[1] He asked Male One if he was a resident and Male One responded that he was a visitor. Jones then came out of her apartment and told Officer Phipps that Male One was her guest.    The building manager stated that she wanted all of Jones's guests served with a

---

[1]    The Texas Syndicate is a criminal gang in Texas.

2

criminal trespass warning, so Officer Phipps returned to his vehicle to retrieve the appropriate paperwork. Before he left, Officer Phipps told Jones that he wanted to speak to the male he saw knock on her door upstairs.

When Officer Phipps returned to the apartment complex, he proceeded to issue a criminal trespass warning to Male One. Jones then brought another male to Officer Phipps's attention (Male Two), but Officer Phipps stated that it was not the man who had been harassing her previously. Officer Phipps told Jones to bring him Saenz, the male that was knocking on her door. Jones left with Male Two.

Officer Phipps finalized his issuance of the criminal trespass warning to Male One and then went in search of Jones. Officer Phipps found Jones and noticed that she was now walking with Saenz. Officer Phipps then yelled at Jones and Saenz to stop walking because he wanted to question Saenz about whether he was a resident of the apartment complex. The officer testified that, at that time, he had "a reasonable belief or suspicion that [Saenz] had committed the offense of criminal trespass."

Jones and Saenz turned and looked at the officer. Officer Phipps repeated, "*Yeah, you, the one that just looked at me.*" Saenz immediately left running. Officer Phipps began to chase him and yelled out to Saenz that he would be tased if he did not stop running. Saenz stopped. The entire event was recorded on Officer Phipps's taser camera, a copy of which was admitted into evidence.[2]

After chasing Saenz, Officer Phipps discovered that Saenz had outstanding warrants. He was arrested. After a bench trial, the trial court convicted Saenz of evading arrest and sentenced him to 180 days in the Texas Department of Criminal

---

[2] The DVD of this recording was not made part of the appellate record.

Justice—State Jail Division. *See* TEX. PENAL CODE ANN. § 38.04. Saenz subsequently filed this appeal.[3]

## II. APPLICABLE LAW

The Texas Penal Code provides that a person is guilty of evading arrest or detention "if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him." *Id.* Here, the threshold question is whether Officer Phipps was attempting to arrest or detain Saenz lawfully.

"In the landmark decision of *Terry v. Ohio*, the United States Supreme Court held that a police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Woods v. State*, 956 S.W.2d 22, 35 (Tex. Crim. App. 1997) (citing *Terry v. Ohio*, 392 U.S. 1, 29 (1968)). "The *Terry* court recognized the precarious balance between a citizen's right to privacy and law enforcement's personal safety interests." *Id.* "To discourage police harassment carried out indiscriminately based on social stereotypes, race, gender or other irrelevant personal characteristics, the Court explained that the officer must be able to point to specific articulable facts which, taken together with rational inferences from those facts, reasonably warrant the detention." *Id.* (citing *Terry*, 392 U.S. at 21). "These facts must amount to something more than an inchoate and unparticularized suspicion or hunch." *Terry*, 392 U.S. at 21.

---

[3] We deny Appellant's "Motion for Court to Treat State's Failure to File Brief as a Confession of Error," which was carried with the case, as moot. The State filed its brief on May 16, 2013.

### III.   STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for abuse of discretion, and we review the record of the hearing on the motion in the light most favorable to the trial court's ruling.  *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); *Villarreal v. State*, 935 S.W.2 d 134, 138 (Tex. Crim. App. 1996).   Ruling on a motion to suppress lies within the sound discretion of the trial court.   *Villarreal*, 935 S.W.2d at 138. "When the trial court does not file findings of fact concerning its ruling on a motion to suppress, we assume that the court made implicit findings that support its ruling, provided those implied findings are supported by the record."   *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).

### IV.   ANALYSIS

By his only issue, Saenz contends that the trial court abused its discretion when it denied his motion to suppress and deemed Officer Phipps's arrest of him lawful.   Saenz contends that Officer Phipps's running chase, threat to tase, and yell to him was "unsupported by and without reasonable suspicion or probable cause" that Saenz was, had been, or was about to be engaged in criminal activity.   We disagree.

The trial court heard evidence that the Aransas Pass Police Department routinely checked on the Shady Oaks Apartments because of past criminal activity.   Officer Phipps testified that the apartment building manager believed that Jones's visitors, including Saenz, Male One, and Male Two, were engaged in gang activity, drug possession, and/or prostitution.   Officer Phipps reported that the building manager wanted criminal trespass warrants issued to all of Jones's visitors.   The officer witnessed Saenz "being persistent" in searching for someone, and also noted that Jones

5

seemed "scared" when he knocked on her door. Officer Phipps also stated that some of the visitors were sporting Texas Syndicate gang tattoos and admitted that, in his opinion and experience as a five-year certified peace officer, "individuals who are congregating together sporting gang tattoos" can be an "indicator of gang activity." Although Officer Phipps noted that he had no warrant, he explained that he wanted to talk to Saenz because the building manager claimed he was a trespasser.

The trial court had a similar take on the issue:

> The officer testified . . . he intended to—was there to identify the defendant to ensure that he was not previously been served [sic] and, if he had not been served, to serve him with a criminal trespass warning as stated on the videotape.

We hold that the trial court did not abuse its discretion when it concluded that Officer Phipps was able to demonstrate "specific articulable facts which, taken together with rational inferences from those facts," reasonably warranted Saenz's detention and ultimate arrest. *See Woods*, 956 S.W.2d at 35 (citing *Terry*, 392 U.S. at 21). We overrule Saenz's only issue.

## V. CONCLUSION

Having overruled Saenz's sole issue, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
8th day of August, 2013.

6